LESLIE A. TRAVIS
leslie.travis@guam.gov
JEFFREY A. MOOTS
jeffrey.moots@guam.gov
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
P.O. Box 2950, Hagåtña, Guam 96932
Office: (671) 473-1117 | Fax: (671) 477-4826

***Attorneys for the***
***Honorable Lourdes A. Leon Guerrero***
***Governor of Guam***

**IN THE UNITED STATES DISTRICT COURT OF GUAM**

**LOURDES A. LEON GUERRERO**, *I MAGA'HÅGAN GUÅHAN*, GOVERNOR OF GUAM, *in her official capacity*,

Plaintiff,

v.

**DOUGLAS B. MOYLAN**, ATTORNEY GENERAL OF GUAM, *in his official capacity*,

Defendant.

**Case No. 25-CV-00030**

Removed from the Superior Court of Guam
Case No. CV0190-25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNOR LEON GUERRERO'S MOTION TO REMAND (28 U.S.C. § 1447(c))**

# TABLE OF CONTENTS

**I. FACTUAL AND PROCEDURAL BACKGROUND** ……………………….…………..1

**II. ARGUMENT** ……………………………………………………….………...……….6

A. AG Moylan's Notice of Removal is Untimely …………...…………….……………………6

B. AG Moylan has not asserted adequate basis for subject matter jurisdiction ……….…....11

1. The Complaint does not allege a claim arising under federal law …….….…13

2. AG Moylan is not an officer of the United States …………………...…...…19

C. Alternatively, the Court has discretion to decline to exercise jurisdiction over the declaratory judgment action …………………………………………….…..…....22

**III. CONCLUSION** ……………………………………………………….………...…..23

**CASES**

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
769 F.3d 204 (3d Cir. 2014)........................................................................................ 8

*Argonaut Ins. Co. v. St. Francis Med. Ctr.*,
17 F.4th 1276 (9th Cir. 2021)........................................................................................22

*Balboni v. Ranger Am. of the V.I., Inc.*,
70 V.I. 1048 (V.I. 2019)........................................................................................ 17,18

*Barrett-Anderson v. Camacho*,
2018 Guam 20........................................................................................................ 4

*Benham-Dwyer v. Neiman Marcus Grp. LLC*,
2025 WL 546552 (N.D. Cal. Feb. 19, 2025)................................................................ 9

*Billings v. United States*,
57 F.3d 797 (9th Cir.1995)........................................................................................ 20

*Boggs v. Lewis*,
863 F.2d 662 (9th Cir. 1988)........................................................................................8

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)........................................................................................22, 23

*California by & through Harrison v. Express Scripts, Inc.*,
139 F.4th 763 (9th Cir. 2025)........................................................................................ 20

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)........................................................................................ 13, 15

*Chargualaf v. Guam Daily Post-Core Tech*,
2024 WL 643114 (D. Guam Feb. 16, 2024................................................................ 14

*City & Cnty. of Honolulu v. Sunoco LP*,
39 F.4th 1101 (9th Cir. 2022)........................................................................................ 21

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020)........................................................................................ 14

*Cnty. of San Mateo v. Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022)........................................................................................ 13

*Dyer v. Abe*,
138 F. Supp. 220 (D. Haw. 1956)................................................................................ 17

*Fifty Associates v. Prudential Ins. Co. of Am.*,
446 F.2d 1187 (9th Cir. 1970)........................................................................................ 12

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*,
590 U.S. 448 (2020)...................................................................................................... 21

*Fristoe v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980)..................................................................................... 6, 11

*Gardner v. Bliss Sequoia Ins. & Risk- Advisors, Inc.*,
434 F. Supp. 3d 862 (D. Nev. 2020)................................................................................ 8

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992)......................................................................................... 13

*Glucksman v. Columbia Broad. Sys., Inc.*,
219 F. Supp. 767 (S.D. Cal. 1963)................................................................................. 12

*Gov't Employees Ins. Co. v. Dizol*,
133 F.3d 1220 (9th Cir. 1998)....................................................................................... 22

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)........................................................................................... 14, 16, 17

*Granovsky v. Pfizer, Inc.*,
631 F. Supp. 2d 554 (D.N.J. 2009)................................................................................... 7

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
776 F. Supp. 1422 (D. Guam 1990)................................................................................ 18

*Gunn v. Minton*,
568 U.S. 251 (2013)........................................................................................... 14, 16, 17

*Hansen v. Grp. Health Coop.*,
902 F.3d 1051 (9th Cir. 2018)....................................................................................... 12

*Healy v. Ratta*,
292 U.S. 263 (1934)...................................................................................................... 20

*Hueter v. Kruse*,
576 F. Supp. 3d 743 (D. Haw. 2021).............................................................................. 20

*In re: Pharm. Indus. Average Wholesale Price Litig.*,
307 F. Supp. 2d 190 (D. Mass. 2004)................................................................................ 7

*In re: Request of Leon Guerrero Relative to the Duties of the Attorney General of Guam to Executive Branch Agencies*,
2024 Guam 18 .......... Passim

*J.L. McGuire & Assocs. v. Innovative Ceramics, Inc.*,
63 F. Supp. 2d 841 (N.D. Ohio 1999) .......... 10

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) .......... 13

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136 (9th Cir. 2013) .......... 6

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) .......... 4

*Law Offices of Phillips & Bordallo, P.C. v. Guerrero*,
2023 WL 5075374 (D. Guam Aug. 9, 2023) .......... 17, 18

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, NA.*,
77 F. Supp. 3d 376 (S.D.N.Y. 2015) .......... 7

*Lewis v. Time Inc.*,
83 F.R.D. 455 (E.D. Cal. 1979) .......... 12

*Limtiaco v. Camacho*,
549 U.S. 483 (2007) .......... 18

*Lina'la Sin Casino*,
2006 WL 3147659 (D. Guam 2006) .......... 13

*Manchin v. Browning*,
170 W.Va. 779, 296 S.E.2d 909 (1982) .......... 4

*Mesa v. California*,
489 U.S. 121 (1989) .......... 19

*Nessel on behalf of People of Michigan v. Enbridge Energy, LP*,
104 F.4th 958 (6th Cir. 2024) .......... 9

*Paeste v. Gov't of Guam*,
798 F.3d 1228 (9th Cir. 2015) .......... 20

*Puerto Rico v. Rubert Hermanos, Inc.*,
309 U.S. 543 (1940) .......... 17

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)........................................................................................... 22

*Rea v. Michaels Stores Inc.*,
742 F.3d 1234 (9th Cir. 2014)........................................................................................ 6

*Republican Party of Guam v. Gutierrez*,
277 F.3d 1086 (9th Cir. 2002)............................................................................ 14, 15, 16

*Rivet v. Regions Bank of La.*,
522 U.S. 470 (1998)........................................................................................... 15

*Rocili v. Envtl. Techs., Inc.*,
2006 WL 8438687........................................................................................... 9

*Sandpiper Mgmt., LLC v. JP Morgan Chase & Co.*,
2010 WL 4055567 (S.D. Cal. Oct. 15, 2010)........................................................ 9

*Santos v. Calvo*,
D.C. Civ. No., 80-0223A, 1982 WL 30790
(D. Guam App. Div. Aug. 11, 1982)................................................................. 4

*Three Pirates, LLC v. Shelton Bros., Inc., 3:16-CV-01054-JE*,
2016 WL 6534523 (D. Or. Sept. 27, 2016)........................................................ 10

*Transp. Indem. Co. v. Fin. Tr. Co.*,
339 F. Supp. 405 (C.D. Cal. 1972)................................................................. 9

*Value Recovery Grp., Inc. v. Hourani*,
115 F. Supp. 2d 761 (S.D. Tex. 2000)................................................................. 10

*Villarreal v. Scottsdale Ins. Co.*,
2012 WL 13048213 (S.D. Tex. Dec. 10, 2012)...................................................... 8

**STATUTES**

5 GCA § 30104........................................................................................... 16, 21

5 GCA § 30109........................................................................................... 16

5 GCA § 22401........................................................................................... 1

9 GCA § 49.90........................................................................................... 1

28 U.S.C. § 1331........................................................................................... 13, 15

28 U.S.C. § 1441(a)........................................................................................... 13

28 U.S.C. § 1442 .......... Passim

28 U.S.C. § 1446 .......... 6, 10

28 U.S.C. § 1446(b)(3) .......... 6, 9

28 U.S.C. § 1446(b)(1) .......... 10

28 U.S.C. § 1446(c) .......... 8

28 U.S.C. § 2201(a) .......... 22

28 U.S.C. § 2403 .......... 4

42 U.S.C. § 1983 .......... 20

48 U.S.C. Chapter 8A .......... 19

48 U.S.C. § 1424-1 .......... 16

48 U.S.C. § 1421g(d)(1) .......... 16, 21

**RULES**

Fed. R. Civ. P. 5.1 .......... 3, 4

Fed. R. Civ. P. 5.1(a) .......... 3

Guam R. Civ. P.12(a) .......... 2

**OTHER AUTHORITIES**

14C Charles Alan Wright, *et al.,*
Federal Practice and Procedure § 3731 (Rev. 4th ed. 2025) .......... 6

14C Charles Alan Wright, *et al.,*
Federal Practice and Procedure § 3732 (3d ed. & Supp. 2008) .......... 10

Plaintiff Lourdes A. Leon Guerrero, *I Maga'hågan Guåhan*, Governor of Guam, filed an action for declaratory judgment in the Superior Court of Guam, seeking a declaration that the Office of the Attorney General ("OAG") is unavailable to investigate or prosecute Defendant Douglas B. Moylan ("AG Moylan") and Chief Deputy Attorney General ("CDAG") Joseph Guthrie for potential crimes due to a conflict of interest, and that Governor Leon Guerrero is authorized to appoint a Special Assistant Attorney General ("SAAG") and a Special Prosecutor to perform these duties. On July 1, 2025, AG Moylan removed this action to this Court. Governor Leon Guerrero now moves to remand this action to the Superior Court of Guam.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2025, Governor Leon Guerrero filed a Complaint for Declaratory Judgment ("Complaint") in the Superior Court of Guam seeking declaratory relief under Guam law. Compl., ECF No. 1-1. The Complaint alleged that AG Moylan and CDAG Guthrie had violated Guam law and personnel rules in the hiring of AG Moylan's brother, *id.* at ¶¶ 37-48, and his fiancée, *id.* at ¶¶ 49-65, and that their employment as unclassified employees of the OAG was illegal. *Id.* at ¶ 66. The Complaint further alleged that the OAG unlawfully employed approximately eighty-six (86) unclassified employees as of January 24, 2024, far in excess of the four (4) unclassified employees Guam law generally permits. *Id.* at ¶¶ 10-19, 30-35.

The Complaint alleges that AG Moylan and CDAG Guthrie's actions may constitute crimes under Guam law, specifically illegal expenditures (5 GCA § 22401) and official misconduct (9 GCA § 49.90). *Id.* at ¶¶ 69-75. Because the OAG is conflicted from investigating or prosecuting AG Moylan and CDAG Guthrie for potential criminal violations of Guam law, the Complaint asserts, Governor Leon Guerrero is empowered to appoint a SAAG and a Special Prosecutor to perform such duties lest the law go unenforced. *Id.* at ¶¶ 76-80.

The original summons served on AG Moylan along with the Complaint on March 18, 2025, mistakenly informed him that he had twenty (20) days to answer the Complaint, instead of the sixty (60) days permitted by Rule 12(a) of the Guam Rules of Civil Procedure. AG Moylan moved to dismiss the Complaint based on improper service. GRCP Rule 12(b)(5) Motion to Dismiss the Complaint & Memorandum of Points and Authorities in Support ("Motion to Dismiss"), ECF No. 1-1 at 30-33. On May 20, 2025, the parties agreed[1] that Governor Leon Guerrero would serve a corrected summons on AG Moylan, which the court memorialized in a written order on May 21, 2025. *See* Order Declaring Moot Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to Amend Summons ("5/21/25 Order"), ECF No. 1-1 at 50. Governor Leon Guerrero served AG Moylan with the Amended Summons on May 21, 2025. *See* Amended Summons, ECF No. 1-1 at 4-5; Decl. of Service, ECF No. 1-1 at 45-49; Certified Mail Envelope, ECF No. 1-1 at 51.

On May 21, 2025, AG Moylan filed a Statement of Objection to Judge Terlaje presiding over the case. *See* Statement of Objection, ECF No. 1-1 at 52-190. Superior Court Judge Maria T. Cenzon was assigned to hear AG Moylan's requested recusal of Judge Terlaje. *See* Notice of Assignment of Recusal Judge, ECF No. 1-1 at 198. On June 23, 2025, Judge Cenzon issued a decision and order denying the Attorney General's request to disqualify Judge Terlaje ("6/23/25 Dec. & Order"). *See* 6/23/25 Dec. & Order, ECF No. 1-1 at 199-218.

On July 1, 2025, eight (8) days after Judge Cenzon denied his request to recuse Judge Terlaje, and forty-one (41) days after he was served with the Amended Summons and Complaint,

---

[1] In his Notice of Removal, AG Moylan claims that his motion to dismiss based on lack of personal jurisdiction because of the defective summons "*was well taken* and culminated in a May 21, 2025 order directing Plaintiff to serve a 'corrected' summons upon [AG Moylan]..." Not., ECF No. 1 at 11 (emphasis added). Superior Court Judge John C. Terlaje did not in any manner concur in AG Moylan's Motion to Dismiss, which Governor Leon Guerrero vehemently opposed. Rather, as Judge Terlaje noted in his 5/21/25 Order, the motion to dismiss and the motion for leave to amend summons were mooted by stipulation of the parties. 5/21/25 Order, ECF No. 1-1 at 50.

AG Moylan removed the case to this Court, claiming that Governor Leon Guerrero's Complaint "turns on substantial questions of federal law" and "implicate[s] significant federal issues" because granting the relief Governor Leon Guerrero requested "would violate the 1950 Organic Act of Guam." Not., ECF No. 1 at 3. Alternatively, AG Moylan claims to be a federal officer within the meaning of 28 U.S.C. § 1442, and that the Governor has sued him "for actions taken under color of office under the Organic Act of Guam." *Id.* at 2-3. AG Moylan argues that by suing for a declaratory judgment that he is conflicted from investigating and prosecuting himself and CDAG Guthrie for potential crimes, Governor Leon Guerrero is "seeking to *de facto* remove [him] from office in violation of the Organic Act." *Id.* at 4.

Seeking to bolster his claim of a federal question, on July 14, 2025, AG Moylan filed a Notice of Constitutional Challenge of a Federal Statute ("Notice of Constitutional Challenge"). *See* Notice of Constitutional Challenge, ECF No. 3. In his filing, AG Moylan claims that the Governor's requested declaratory relief constitutes "an unconstitutional attempt by the Governor to amend an Act of Congress," and that "[t]he United States must intervene in this matter to avert this attempt to amend the structure of the U.S. territorial government of Guam and the delicate balance of power intended by the U.S. Government and codified in the U.S. Congress' 1950 Organic Act of Guam." *Id.* at 7. AG Moylan further attached his letter to U.S. Attorney General Pamela Bondi, claiming not that the Governor is challenging the constitutionality of the Organic Act, but that the relief she seeks would impermissibly amend the Organic Act. Letter from D. Moylan to P. Bondi re *Lourdes A. Leon Guerrero, Governor of Guam v. Douglas B. Moylan, Attorney General of Guam*, ECF No. 3-2 at 2. [2]

[2] Rule 5.1 of the Federal Rules of Civil Procedure requires a party that files a pleading "drawing into question the constitutionality of a federal or state statute" to file a notice of constitutional question and serve the notice and pleading on the Attorney General or the United States. Fed. R. Civ. P. 5.1(a). The rule further requires the court to certify to the appropriate attorney general that

But as the plain language of the Complaint demonstrates, Governor Leon Guerrero is not seeking AG Moylan's ouster from office. Rather, she seeks a declaratory judgment that AG Moylan cannot investigate and prosecute himself because he has an obvious conflict of interest, and that, under such limited circumstances, the Governor is authorized to appoint a special prosecutor to ensure faithful execution of the law. This position is entirely consistent with the Organic Act, Guam law, and the Guam Rules of Professional Conduct.

In *In re: Request of Leon Guerrero Relative to the Duties of the Attorney General of Guam to Executive Branch Agencies*, the Guam Supreme Court observed:

> As a licensed attorney, the Attorney General must conform his conduct to the law, including those requirements set forth in the GRPC. *Manchin* [*v. Browning*, 170 W.Va. 779, 790, 296 S.E.2d 909, 920 (1982)], ("As a lawyer and an officer of the courts of this State, the Attorney General is subject to the rules of this Court governing the practice of law and the conduct of lawyers, which have the force and effect of law."). But it is not the judiciary's place to invade the internal decision-making process of how an elected official runs his office. *See Santos v. Calvo*, D.C. Civ. No. 80-0223A, 1982 WL 30790, at *4 (D. Guam App. Div. Aug. 11, 1982); *see also Barrett-Anderson*, 2018 Guam 20 ¶¶ 29-30 (discussing Attorney General's argument that "trial court's order violates the separation of powers by invading 'an internal decision-making process of the executive branch'"). We can answer what the law permits the Attorney General to do to conform his conduct to the GRPC, without dictating *how* he must run the Office of the Attorney General. Yet when faced with a conflict, the Attorney General cannot simply choose to do nothing. *See, e.g.*, *Lacey v. Maricopa County*, 693 F.3d 896, 933 (9th Cir. 2012) (holding prosecutors have a legal duty to avoid conflicts of interest).

---

a statute has been questioned pursuant to 28 U.S.C. § 2403, and authorizes the attorney general to intervene within sixty (60) days of the notice. *Id.* Title 28 U.S.C. § 2403 in turn provides that in any action "wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General…"
However, Rule 5.1 plainly applies *only* when the constitutionality of a law is challenged. While AG Moylan expressly claims that the Governor seeks relief that is contrary to the Organic Act, or that, if granted, the relief sought would impermissibly amend the Organic Act, he *does not* claim that Governor Leon Guerrero is challenging the constitutionality of the Organic Act, or any other federal law, and the Governor's Complaint does not allege that the Organic Act is unconstitutional. Rule 5.1 plainly does not apply in this case, and the Court is not required to certify a constitutional challenge or permit intervention by the Attorney General to defend the constitutionality of the law.

2024 Guam 18 ¶ 67. The Court further held that "[b]ecause the Attorney General is the legal representative for the Government of Guam, he cannot be displaced without his agreement" or *"a formal declaration by a proper authority that the Attorney General is "unavailable" to act in that capacity." Id*. at ¶ 81 (footnote omitted and emphasis added). If the Attorney General will not conduct himself in conformity with his ethical responsibilities, then the Governor is authorized to seek declaratory relief to recognize his unavailability.[3]

Consistent with the Guam Supreme Court's holding in *In re Leon Guerrero*, the Governor first sought the Attorney General's voluntary acknowledgment that he cannot investigate, and, if warranted, prosecute his own alleged wrongdoing and that of his immediate subordinate CDAG Guthrie. Compl., ECF No. 1-1 at ¶ 66. The Attorney General failed to respond to the Governor's request that he acknowledge his unavailability to perform these actions himself due to his obvious conflict of interest. *Id.* at ¶ 67. Absent the Attorney General's voluntary compliance to either withdraw or to establish appropriate conflict walls, Governor Leon Guerrero, pursuant to *In re Leon Guerrero*, sought a declaration from the Superior Court that she was authorized to retain conflict-free legal counsel to investigate and, if warranted, criminally or civilly prosecute the Attorney General and his Chief Deputy. In her Complaint, Governor Leon Guerrero specifically requested that the court:

1. Issue a declaratory judgment finding that the Office of the Attorney General is unavailable to investigate or prosecute any potential criminal or civil claims against Attorney General Moylan and Chief Deputy Attorney General Guthrie.

2. Issue a declaratory judgment finding that Governor Leon Guerrero is authorized to appoint a Special Assistant Attorney General and Special Prosecutor to perform all

[3] "The Attorney General must implement conflict protocols consistent with the Guam Rules of Professional Conduct… [W]here the Attorney General refuses to act, is incapable of acting, or is unavailable, the agencies cannot be left without representation. When the Governor determines that she must act lest the law go unenforced, she may act using the legal means that are at her disposal." *Id.*, 2024 Guam 18 ¶ 84.

> actions necessary to investigate and, if necessary, prosecute Attorney General Moylan and Chief Deputy Attorney General Guthrie for potential violations of Guam laws and regulations related to employment, promotion, and payment of employees of the Office of the Attorney General.

Compl., ECF No. 1-1 at 18-19.

The Attorney General argues in his Notice of Removal that the Governor, in her Complaint, seeks his *complete* ouster as Guam's elected Attorney General, not merely permission to retain counsel to investigate and, if appropriate, prosecute him and his Chief Deputy for their potentially unlawful hiring practices, due to the clear conflict preventing his office from performing these actions. Not., ECF No. 1 at ¶¶ 23-24. However, no plausible reading of the Complaint supports the Attorney General's paranoid conjecture, which radically misconstrues from the limited relief the Governor seeks in her prayer for relief. The Complaint contains no federal cause of action or claim to support federal question jurisdiction.

## II. ARGUMENT

### A. AG Moylan's Notice of Removal is Untimely.

Title 28 U.S.C. § 1446 provides in relevant part that "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…" 28 U.S.C. § 1446(b)(1). The 30-day removal clock begins to run when the pleading "affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). While the Ninth Circuit Court of Appeals recognizes the statutory time limit for removal in Section 1446 is procedural rather than jurisdictional, the time limit "is mandatory and a timely objection to a late petition will defeat removal." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013) (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)); *see also* 14C Charles Alan

Wright, *et al.,* Federal Practice and Procedure § 3731 (Rev. 4th ed. 2025) ("The thirty-day time limit is mandatory, and is intended to prescribe a uniform time frame, at the beginning of immediately removable actions, within which removal will be effected. The goal is early resolution of the court system in which the case will be heard.") (quotation omitted).

While AG Moylan suggests the deadline to file his Notice of Removal ran on June 20, 2025, eleven (11) days before he filed, *see* Not., ECF No. 1 at 11-12 ("...[I]t would appear that the deadline to file to [sic] the notice of removal was June 20, 2025"), the deadline for filing actually occurred months prior. The original summons was served on AG Moylan on March 18, 2025, along with the Complaint. While the initial summons issued to AG Moylan in this case contained a technical defect – it stated a 20-day answer date, instead of the 60-day limit provided by the civil procedure rule – the Complaint served concurrently with the initial summons contained the facts AG Moylan claims support federal jurisdiction over this matter, and constitutes the filing from which AG Moylan should have first ascertained purported removability of the matter.

The technical defects of the original summons notwithstanding, AG Moylan's 30-day removal clock therefore began to run on March 18th, expiring on April 17, 2025. *Cf. Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 77 F. Supp. 3d 376, 378 (S.D.N.Y. 2015) (holding that defendant's time to remove expired thirty days after it accepted service notwithstanding misnomer of defendant); *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 562 (D.N.J. 2009) (holding that the removal countdown began upon simultaneous receipt of the summons and complaint, even if such service was not "jurisdictionally effective"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 190, 196 (D. Mass. 2004) (observing that "a technical defect in the service of process does not invalidate the service where the plaintiff has substantially

complied with the appropriate state-law rule" and holding that formal service of a summons with a technical defect triggered the thirty-day period for consent to removal).[4]

Assuming, *arguendo*, that the initial summons was ineffective to trigger the removal clock, the clock would have certainly begun to run on May 21, 2025, the date AG Moylan received the amended summons. As discussed, AG Moylan concedes that "it would appear that the deadline to file to [sic] the notice of removal was June 20, 2025." Not., ECF No. 1 at 11-12. He argues, however, that the deadline to file the Notice of Removal was equitably tolled due to extraordinary circumstances beyond his control – he "*had to wait* until a determination on its Notice of Objection" before removing the case. *Id*. (emphasis added).

The Ninth Circuit "strictly construes the removal state against removal jurisdiction," *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and AG Moylan has not referenced binding authority that recognizes equitable tolling of the removal period.[5] In fact, as discussed more fully below, numerous other courts in this circuit have held that "the thirty-day period may not be enlarged by act of the Federal Court, by act of the State Court or by mere consent of the Plaintiff to extend the

---

[4] Though the parties ultimately agreed that Governor Leon Guerrero would serve a corrected summons to AG Moylan, which she served on May 21, 2025, mooting the motions to dismiss and to amend the summons, Governor Leon Guerrero did not concede that the original summons was ineffective service of process, and maintained that the technical defect in the answer date provided in the initial summons did not deprive the Superior Court of subject matter jurisdiction.

[5] Several courts have addressed equitable tolling in the context of the one-year removal limit provided in 28 U.S.C. § 1446(c) (removal based on diversity jurisdiction), holding that equitable tolling, other than the bad faith exception expressly delineated in the statute, does not permit otherwise untimely removal of the claims. *See Gardner v. Bliss Sequoia Ins. & Risk Advisors, Inc.*, 434 F. Supp. 3d 862, 868 (D. Nev. 2020); *Villarreal v. Scottsdale Ins. Co.*, CV B: 12-152, 2012 WL 13048213, at *4 (S.D. Tex. Dec. 10, 2012), *report and recommendation adopted*, CV B-12-152, 2013 WL 12314975 (S.D. Tex. Jan. 15, 2013) ("Equitable tolling applies principally where one party is actively misled by the opposing party about the cause of action or is prevented in some extraordinary way from asserting his rights…a garden variety claim of excusable neglect does not support equitable tolling.") (quotations omitted); *cf. A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 211 (3d Cir. 2014) (holding that while non-jurisdictional time limitation may be modified by equitable concerns, cases involving such equitable tolling "often focus on intentional misconduct by the plaintiff.").

time for removal." *Transp. Indem. Co. v. Fin. Tr. Co.*, 339 F. Supp. 405, 407 (C.D. Cal. 1972); *accord Benham-Dwyer v. Neiman Marcus Grp. LLC*, 24-CV-08643-JCS, 2025 WL 546552, at *7 (N.D. Cal. Feb. 19, 2025); *Rocili v. Envtl. Techs., Inc.*, 3:06-CV-00007 (JWS), 2006 WL 8438687, at *2 (D. Alaska Mar. 3, 2006); *Sandpiper Mgmt., LLC v. JP Morgan Chase & Co.*, 10CV1802, 2010 WL 4055567, at *1 (S.D. Cal. Oct. 15, 2010).

AG Moylan nonetheless urges the Court to apply equitable tolling here, relying on the U.S. Supreme Court's recent grant of certiorari from a decision from the Sixth Circuit Court of Appeals in *Nessel on behalf of People of Michigan v. Enbridge Energy, LP*, 104 F.4th 958 (6th Cir. 2024), *cert. granted sub. Nom. Enbridge Energy, LP v. Nessel*, No. 24-783, 2025 WL 1787715 (Jun. 30, 2025), where the question presented is "[w]hether district courts have the authority to excuse the thirty-day procedural time limit for removal in 28 U.S.C. § 1446(b)(1)." The supporting circuit decisions cited in the *Nessel* petition excused untimeliness based on extraordinary circumstances. *See* Petition for Writ of Certiorari, ECF No. 1-2 at 29-33. AG Moylan has failed to identify sufficient extraordinary circumstances or alleged inadvertence in support of his argument. Even if the U.S. Supreme Court reversed the Sixth Circuit in *Nessel*, AG Moylan's Notice of Removal would still not excuse his tardy Notice of Removal in this case.

AG Moylan claims that the following circumstances constitute "extraordinary circumstances" that merit the application of equitable tolling in this matter: (1) the fact that he "had to wait until a determination on its (sic) Notice of Objection to proceed with the case," and (2) the "conflict" created by Judge Terlaje's 5/21/25 order directing AG Moylan to respond to the Complaint within sixty (60) days, coupled with the "seemingly intractable 30-day time limit imposed by 28 U.S.C. 1446(b)(1)." Not., ECF No. 1 at ¶¶ 19-20. Neither of these circumstances may reasonably be construed as "extraordinary," or otherwise tolls AG Moylan's 30-day deadline to file his Notice of Removal.

AG Moylan did not "have to wait" for Judge Cenzon's decision as to Judge Terlaje's potential disqualification. *See J.L. McGuire & Assocs. v. Innovative Ceramics, Inc.*, 63 F. Supp. 2d 841, 842 (N.D. Ohio 1999) ("Pretrial objections or motions do not stay the period in which removal must be sought under § 1446(b)."). In fact, AG Moylan was not compelled to object to Judge Terlaje presiding in the matter before he removed the case to this Court – this filing was uniquely within his control. Moreover, while his objection to Judge Terlaje effectively prevented Judge Terlaje from further acting in the matter pending resolution of the disqualification inquiry,[6] it did not prevent AG Moylan from filing his Notice of Removal in his Court.

Nor was Judge Terlaje's disqualification related to removal. No federal questions were unearthed in the disqualification process or in Judge Cenzon's 6/23/25 Dec & Order rejecting AG Moylan's objection to Judge Terlaje. While 28 U.S.C. § 1446(b)(3) provides that, if a case is not removable based on the initial pleading, a party may file a notice of removal within thirty (30) days after receipt of "an amended pleading motion or other paper from which it may be first ascertained that the case is one which is or has become removable," AG Moylan has not claimed that he only first ascertained removability of the case after Judge Cenzon issued the 6/23/25 Dec. & Order. In fact, AG Moylan has offered no analysis whatsoever supported by binding legal

[6] A stay of the state court case does not toll a removal deadline under Section 1446. *See Three Pirates, LLC v. Shelton Bros., Inc.*, 3:16-CV-01054-JE, 2016 WL 6534523, at *4 (D. Or. Sept. 27, 2016), report and recommendation adopted, 3:16-CV-01054-JE, 2016 WL 6561557 (D. Or. Nov. 1, 2016) (holding that a stay of a state court action did not toll the 30-day period for filing removal notice because "actions of the state court do not operate to affect or enlarge the statutory time limit for removal.") (citing *Value Recovery Grp., Inc. v. Hourani*, 115 F. Supp. 2d 761, 767 (S.D. Tex. 2000) (holding that state court stay did not preclude removal during the stay and "[a]lthough the Removing Defendants may have been precluded from taking action in the state trial court case, the state court's stay order did not bar defendants from removing the case to this court.")); *see also* 14C Charles Alan Wright, *et. al*, Federal Practice and Procedure § 3732 (3d ed. & Supp.2008) ("the decided cases make it clear that these statutory periods will not be extended by the district court continuances, demurrers, motions to set aside service of process, pleas in abatement, stipulations, or various other court orders").

authority as to how or why his equitable tolling argument applies other than his fervent desire to wait-and-see whether Judge Cenzon would disqualify Judge Terlaje.[7]

Nor does the concurrence of the 60-day deadline to file his Answer to the Complaint and the 30-day deadline to remove justify his delay in filing his notice. These deadlines could not be more ordinary. Most local court defendants are only in fact permitted twenty (20) days to file and answer, which would likewise run concurrently with the 30-day removal deadline. The only extraordinary quality about these deadlines is AG Moylan's weak excuse for his inability to meet them, given that they are inherent in every civil action filed in the Superior Court that a defendant seeks to remove to this Court.

AG Moylan's Notice of Removal is plainly untimely, and should not be sustained. *See Fristoe,* 615 F.2d at 1212 (9th Cir. 1980). Even if the Court were to entertain his equitable tolling theory, which is not recognized in this Circuit, AG Moylan has failed to meet the requirements thereof, including the demonstration of extraordinary circumstances beyond his control. Accordingly, the Court should grant Governor Leon Guerrero's Motion to Remand on this basis.

**B. AG Moylan has not asserted an adequate basis for subject matter jurisdiction.**

AG Moylan claims that the following bases support removal of this matter to this Court: (1) the action purportedly could have been filed in this Court because the remedies Governor Leon Guerrero seeks in her Complaint purportedly "turn on substantial questions of federal law" and "implicate significant federal issues" because such findings would violate the Organic Act; and, (2) alternatively, the Attorney General of Guam is purportedly a federal officer within the meaning

[7] Equitable tolling should not be applied where the defendant's actions demonstrate an intent to forum shop. *Hourani*, 115 F. Supp. 2d at 767 ("The Removing Defendants waited to see how the state appellate court would rule on their petition for writ of mandamus and then removed to this court when the appellate court denied them relief. Litigants should be discouraged from forum shopping to avoid adverse rulings in the court in which an action was originally filed.").

of 28 U.S.C. § 1442, such that a civil action against him may be removed to this Court. AG Moylan has failed to meet his burden of establishing that the Court has jurisdiction over this matter.

"Federal courts being courts of limited jurisdiction, the presumption is that it is without jurisdiction unless the contrary affirmatively appears." *Fifty Associates v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("States possess sovereignty concurrent with that of the Federal Government, limited only by the Supremacy Clause…State courts enjoy a deeply rooted presumption that they have jurisdiction to adjudicate all claims arising under state or federal law… By contrast, we presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record.") (quotations omitted).

"This rule exists not only because federal courts, being courts of limited jurisdiction, must confine themselves to the jurisdiction granted by Congress…but also because of a plaintiff's traditional right to select the forum and to prosecute his own suit in his own way to a final determination." *Lewis v. Time Inc.*, 83 F.R.D. 455, 458 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983); *see also Glucksman v. Columbia Broad. Sys., Inc.*, 219 F. Supp. 767, 768 (S.D. Cal. 1963) ("...Plaintiff asserts a claim arising under state law, and it has long been held that the party who brings a suit may decide what law he will rely upon."); *Hansen*, 902 F.3d at 1056 ("A plaintiff is the master of the plaintiff's complaint, and has the choice of pleading claims for relief under state or federal law (or both).").

As the Ninth Circuit observed in *Hansen*:

> Given our constitutional role as a limited tribunal and our due regard for the rightful independence of state governments, we strictly construe the removal statute against removal jurisdiction. We must exercise prudence and restraint when assessing the propriety of removal because determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system. If a district court

> determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.

*Id.* This Court recognized the same principles in *Lina'la Sin Casino v. Guam Election Comm'n:*

> In removal actions, the Court is guided by two basic principles. First, the respondent seeking removal has the burden of establishing that the federal court has jurisdiction. Second, removal statutes are to be strictly construed against removal jurisdiction with all doubts resolved in favor of remand. These principles reaffirm the fundamental idea that federal courts are courts of limited jurisdiction and possess "only that power authorized by the Constitution and statute."

*Lina'la Sin Casino*, No. CIV. 06-00035, 2006 WL 3147659 at *1 (D. Guam 2006) (citations omitted; quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022).

**1. The Complaint does not allege a claim arising under federal law.**

In his Notice of Removal, AG Moylan claims that the Court is vested with removal jurisdiction in this matter because the action could have been filed in this Court and because the two remedies Governor Leon Guerrero seeks in her Complaint call for interpretation of the Organic Act. These arguments have no merit.

Under 28 U.S.C. 1441(a), a civil case may only be removed if the district court has original jurisdiction over the matter. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required."). Title 28 U.S.C. § 1331 in turn provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

As the U.S. Supreme Court explained in *Gunn v. Minton*, a case can "arise under" federal law in two ways: (1) when federal law creates the cause of action asserted; or (2) where a state law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[.]" *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

The presence or absence of federal-question jurisdiction is determined by the "well-pleaded complaint rule," which requires that a federal question be presented on the face of the complaint. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*; *see also Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-1089 (9th Cir. 2002); *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (observing that plaintiffs "can generally avoid federal jurisdiction if a federal question does not appear on the face of the complaint."); *Chargualaf v. Guam Daily Post-Core Tech*, No. CV 23-00024, 2024 WL 643118, at *4 (D. Guam Feb. 16, 2024), *reconsideration denied sub nom. Chargualaf v. Guam Daily Post*, No. CV 23-00024, 2024 WL 3226299 (D. Guam 2024).

AG Moylan's Notice of Removal is based on purported federal issues raised in the Governor's Complaint related to one specific federal enactment – the Organic Act. He has not specifically articulated whether he is asserting that the Organic Act "creates the cause of action" the Governor alleges in her Complaint, or whether the Governor's claims meet the stringent criteria for jurisdiction under *Grable-Gunn*. However, his attempts to remove this action fail on both counts. The Complaint does not raise a federal issue that supports removal.

The Complaint seeks a declaratory judgment that (1) the OAG is unavailable to investigate or prosecute potential criminal or civil claims against AG Moylan and CDAG Guthrie and (2) Governor Leon Guerrero is authorized to appoint a SAAG and Special Prosecutor to perform all

actions necessary to investigate and, if necessary, prosecute AG Moylan and CDAG Guthrie for any violations. *See* Complaint, ECF No. 1-1 at 24-25.

AG Moylan claims that the requested relief implicates significant federal issues because an order granting it "would violate the 1950 Organic Act of Guam (Title 48 U.S.C. Chapter 8A)". Not., ECF No. 1 at 3. However, AG Moylan's position that the requested relief, if granted, would violate the Organic Act, a claim Governor Leon Guerrero firmly denies, would not create a federal issue because it does not appear on the face of the Complaint, but rather would merely constitute an argument AG Moylan would offer in defending against the Complaint. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 478 (1998) ("[A] defendant cannot remove on the basis of a federal defense."); *see also Caterpillar*, 482 U.S. at 398–99 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated…federal defenses do not provide a basis for removal."); *Gutierrez*, 277 F.3d at 1089 ("A defense is not a part of a plaintiff's properly pleaded statement of his or her claim.").

In *Guiterrez*, the Guam Legislature and the Republican Party sued the Governor for declaratory and injunctive relief in the District Court of Guam where they asserted the existence of federal question jurisdiction because the Governor allegedly violated his Organic Act duty to faithfully execute the law when he disregarded *a Guam law* governing the appointment of members to the Guam Election Commission. *Id*. 277 F.3d 1088. The trial court ruled in plaintiffs' favor, but the Ninth Circuit Court of Appeals reversed and remanded with instructions to dismiss for lack of subject matter jurisdiction because the case did not present a federal question under 28 U.S.C. § 1331. *Gutierrez*, 277 F.3d 1088. The court held that the plaintiffs' claims did not arise from federal law but from the interpretation of a Guam law under the Organic Act. *Id*. at 1090.


Case 1:25-cv-00030 Document 6-1 Filed 07/31/25 Page 22 of 31

Similarly, while the Organic Act provides for the election of the Attorney General, and designates his office as the "Chief Legal Officer for the government of Guam," 48 U.S.C. § 1421g(d)(1), it is *Guam law* that establishes AG Moylan's role as public prosecutor, and his corresponding powers and responsibilities. *See* 5 GCA § 30104. It is *Guam law* that assigns to the Attorney General the duty to conduct prosecution of all offenses against the laws of Guam, and the duty to perform related functions. 5 GCA § 30109. The Governor's Complaint challenges the Attorney General's ability to perform actions that are related to his statutory prosecutor role, not his Organic Act role as legal officer for the government.

Further, like all attorneys practicing law in Guam, AG Moylan's ethics and conduct are governed exclusively by the Supreme Court of Guam. 48 U.S.C. § 1424-1. *See In re Leon Guerrero*, 2024 Guam 18 ¶ 67 ("As a licensed attorney, the Attorney General must conform his conduct to the law, including those requirements set forth in the [Guam Rules of Professional Conduct]."). The determination of whether the OAG is conflicted from investigating or prosecuting its own leadership must be resolved exclusively according to the framework established by the Supreme Court of Guam through the Guam Rules of Professional Conduct.

Though AG Moylan appears to be signaling he intends to assert that he cannot be conflicted from specific cases in his statutory role as public prosecutor by virtue of his Organic Act role as chief legal officer to the government of Guam, again, his intent to assert such arguments in his defense does not create a federal issue within the context of *Grable-Gunn. See Gutierrez*, 277 F.3d at 1089.

Further, while Governor Leon Guerrero's authority to appoint a Special Prosecutor where the Attorney General is unavailable is inherent in her role as Governor, which is established by the Organic Act, the claim does not implicate a substantial federal issue. "It is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true

when the state claim 'necessarily raise[s]' a disputed federal issue...The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260; *see also Grable,* 545 U.S. at 313 ("federal jurisdiction [over state action] demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.").

The Governor's authority to appoint a Special Prosecutor where the public prosecutor established under Guam law is unavailable has no import across the vast federal panoply, and in fact has not been raised regarding attorneys general beside AG Moylan, who appears intent on disregarding his obligations under the Guam Rules of Professional Conduct. *See In re Leon Guerrero*, 2024 Guam 18; *see also People v. Moylan*, Superior Court of Guam Criminal Case No. CM864-03 (Dec. and Order re Mots. to Dismiss & Mot. to Disqualify, Nov. 16, 2004).

As the Court observed in *Law Offices of Phillips & Bordallo, P.C. v. Guerrero*, "[n]ot all statutes passed by Congress are laws 'of the United States'" in the context of federal question jurisdiction. CV 22-00020, 2023 WL 5075374, at *3 (D. Guam Aug. 9, 2023) (quoting *Dyer v. Abe*, 138 F. Supp. 220, 228, *rev'd on other grounds* 256 F.2d 728 (9th Cir. 1958) ("Congress does not have to provide a federal forum for every statutory right it creates."). "Whether a law passed by Congress is a 'law of the United States' depends on the meaning given to that phrase by its context." *Puerto Rico v. Rubert Hermanos, Inc.*, 309 U.S. 543, 549 (1940).

The Court in *Guerrero* further acknowledged the Supreme Court of the Virgin Islands decision in *Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1071–72 (V.I. 2019), which found:

> [I]t is well-established in the precedents of the Supreme Court of the United States and the federal courts of appeal that whether Congress enacts legislation pursuant to its Article I or Article IV powers is of important constitutional significance, for while laws enacted by Congress in its capacity as a national legislature pursuant to its Article I powers are considered "laws of the United States," laws enacted by Congress through invocation of

> its Article IV powers are not, but rather serve as laws of the territory, with Congress standing in place of a state government.

*Guerrero*, 2023 WL 5075374, at *4 (quoting *Balboni*, 70 V.I. at 1071-72.). "The Bill of Rights provisions in the [] Organic Act are local law rather than federal law, in that though enacted by Congress, the protections apply only within the borders of the Virgin Islands and were never designed to have general protection throughout the United States." *Balboni*, 70 V.I. at 1090.

The Court in *Guerrero* further noted that, like the Bill of Rights discussed in *Balboni*, Congress passed the Organic Act of Guam pursuant to the second clause of Article IV, Section 3 of the Constitution, known as "the Territorial Clause." *Guerrero*, 2023 WL 5075374, at *4. And "[a]lthough Guam's Bill of Rights was passed by Congress and not ratified by the people of Guam, [t]he Organic Act of Guam is a federal statute concerning *only* Guam." 2023 WL 5075374, at *5 (citing *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1427 (D. Guam 1990), *aff'd* 962 F.2d 1366 (9th Cir.), *cert. denied,* 506 U.S. 1011 (1992)).

Finally, the Court in *Guerrero* acknowledged the U.S. Supreme Court's opinion in *Limtiaco v. Camacho*, 549 U.S. 483 (2007), in which the Court appeared to indicate it "would defer to an interpretation of the Supreme Court of Guam of a provision of the Organic Act which address a 'matter[] of *purely* local concern.'" *Guerrero*, 2023 WL 5075374, at *5. The Court in *Guerrero* concluded that, while the Guam Bill of Rights was enacted by Congress, it was intended to confer local rights, and because pertinent sections "only appl[y] on Guam and [are] concerned with protecting persons against a local government, [they are] not a law 'of the United States'" and "cannot form the basis for federal question jurisdiction." *Id.* at *6. The Court ultimately granted the motion to remand the case to Guam courts.

The Court's analysis in *Guerrero* is instructive in this matter. Though the Governor's role as the chief executive of Guam is established by the Organic Act, rendering her ultimately

responsible for ensuring faithful execution of Guam law, her powers, including her inherent authority to appoint a Special Prosecutor where the Attorney General is unavailable to fulfill his prosecutorial duties under Guam law, are local in nature. The ultimate outcome of the case will not impact the federal system as a whole. The Complaint does not, therefore, implicate a substantial question of federal law to support removal jurisdiction.

**2. AG Moylan is not an officer of the United States.**

AG Moylan alternatively seeks removal under 28 U.S.C. § 1442, claiming that he is "an officer created by Congress and a federal instrumentality under the Organic Act of Guam (48 U.S.C. Chapter 8A), which should be construed as an agency or officer for purposes of removal and/or a person acting under a United States agency or officer, in this case the United States Congress." Not., ECF 1 at 3-4. He contends he "is being sued for actions taken under color of office under the Organic Act of Guam, namely acting as the Chief Legal Officer of the Government of Guam." *Id.* at 4 (quotation omitted).

Section 1442 provides in relevant part:

> § 1442. Federal officers or agencies sued or prosecuted
>
> (a) A civil action…commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442.

Federal officer removal law was enacted "to provide a federal forum for cases where federal officials must raise defenses arising from their official duties ... and to protect federal officers from interference by hostile state courts." *Mesa v. California*, 489 U.S. 121, 137 (1989)

(quotations omitted). The elements of the federal officer removal statute include that the individual seeking removal is (1) a "person" within the meaning of the statute; (2) there is a causal nexus between his actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (3) he can assert a colorable federal defense. *California by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 772 (9th Cir. 2025). Further, while the federal officer removal statute is liberally construed, "that guidance must be understood in the broader context of the United States' dual sovereign court system, where federal courts of limited jurisdiction must scrupulously confine their own jurisdiction to the precise limits which the statute authorizing removal jurisdiction has defined." *Id.*, 139 F.4th at 770 (citing *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

The question of whether territorial officials are "federal officers" has been discussed at length in the context of actions brought under 42 U.S.C. § 1983, which authorizes individuals to bring civil actions against persons acting under color of state or territorial law for alleged deprivation of constitutional rights, but "provides no cause of action against federal agents acting under color of federal law." *Billings v. United States,* 57 F.3d 797, 801 (9th Cir.1995).

While organic acts for early continental territories "provided that local officials in the continental territories were 'federal officers,' appointed by the President and under the control of the federal government," *Hueter v. Kruse*, 576 F. Supp. 3d 743, 778 (D. Haw. 2021), organic acts enacted for the "overseas" territories delegate authority to the territorial governments elected by the people of the territories. *Id.* In these organized territories, "it is clear that territorial officials are acting pursuant to 'territorial law' because Congress has delegated legal authority to each territory's government through that territory's organizing legislation." *Id.* at 777. Guam officials are not officers of the federal government "even if the actions they took as territorial officers were *required* by federal law." *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1239 (9th Cir. 2015).

The Attorney General is not a federal officer within the meaning of Section 1442 or otherwise. While his office is created by the Organic Act, he is expressly described therein as "the Chief Legal Officer of the Government of Guam." 48 U.S.C. § 1421g(d)(1). As discussed, the cause of action asserted against him is based on his role as public prosecutor, a role conferred not by the Organic Act, but by Guam law. *See* 5 GCA § 30104. There is simply no indication that Congress intended AG Moylan, or any other Guam entity established under the Organic Act, to qualify as a federal officer within the meaning of Section 1422 or otherwise. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 590 U.S. 448, 464–65 (2020) (finding that members of the Financial Oversight and Management Board established by the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) were not "Officers of the United States" where the law expressly identifies the Board as "an entity within the territorial government," and noting further that Puerto Rico pays the Board's expenses, the salaries of its employees, and confers on the Board powers it may only enforce in Puerto Rico.).

Nor is AG Moylan, as he claims, a "person acting under a United States agency or officer, in this case the United States Congress." A private party "acts under" a federal officer for removal purposes where they (1) work under an officer "in a manner akin to an agency relationship"; (2) are "subject to the officer's close direction, such as acting under the ... 'guidance, or control' of the officer" or having an "unusually close" relationship "involving detailed regulation, monitoring, or supervision"; (3) help fulfill "basic governmental tasks"; and (4) conduct activities "so closely related to the government's implementation of its federal duties that the ... person faces 'a significant risk of state-court prejudice.'" *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022). The Attorney General's relationship with Congress is not "akin to an agency relationship." Congress exercises no regulatory, supervisory or monitoring actions over his

activities. AG Moylan does not help Congress fulfill its tasks. Nor does he relate closely to implementation of Congress's duties.

There is simply no relationship between AG Moylan and Congress such that he can claim to be acting under Congress.

### C. Alternatively, the Court has discretion to decline to exercise jurisdiction over the declaratory judgment action

Assuming, *arguendo*, that AG Moylan had successfully articulated a federal issue sufficient to support removal in this case, the Court should still remand this matter to the Superior Court pursuant to the Declaratory Judgment Act ("DJA"). Under the DJA, "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "This provision confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants, even if the declaratory claim otherwise satisfies subject matter jurisdictional prerequisites. In other words, a district court is under no compulsion to exercise its jurisdiction over declaratory claims." *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021).

In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), the Court set forth factors that courts should consider when determining whether to exercise jurisdiction over a declaratory judgment action: (1) avoiding "needless determination of state law issues"; (2) discouraging "forum shopping"; and (3) avoiding "duplicative litigation." *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). "When it has discretionary jurisdiction, the district court can choose to stay an action…or 'decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court.'" *Argonaut Ins. Co*, 17 F.4th at 1285 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

The *Brillhart* factors weigh against the exercise of jurisdiction and in favor of remand, in this case. First, as discussed, the issue of whether the OAG is conflicted from investigating or prosecuting AG Moylan and CDAG Guthrie hinges exclusively on an interpretation of Guam law and the Guam Rules of Professional Conduct. Second, AG Moylan filed his untimely Notice of Removal eight (8) days after Judge Cenzon denied his attempted disqualification of Judge Terlaje, an effort that would have been unnecessary had AG Moylan earnestly intended to remove the matter to this Court. The timing of his filing demonstrates that AG Moylan in fact decided to remove in an effort to forum shop, having evidently determined Judge Terlaje would not be as favorable a forum as this Court.

These facts weigh against the Court's discretionary exercise of jurisdiction over the Governor's declaratory judgment action under the DJA, and supports remand to the Superior Court of Guam.

## III. CONCLUSION

For the reasons stated herein, Governor Leon Guerrero respectfully requests that the Court issue an order remanding this matter to the Superior Court of Guam.

*Respectfully submitted* this 31st day of July 2025.

**OFFICE OF THE GOVERNOR OF GUAM**
**Office of Legal Counsel**

By: */s/ Leslie A. Travis*
**LESLIE A. TRAVIS**
*Attorneys for Plaintiff*
*Lourdes A. Leon Guerrero,*
*Governor of Guam*

## CERTIFICATE OF SERVICE

I certify that I have served opposing counsel by electronically filing the foregoing document with the Clerk of Court for the United States District Court of Guam using the CM/ECF system.

Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General of Guam
134 W. Soledad Avenue
Ste. 802 Bank of Hawaii Building
Hagåtña, Guam 96910
(671) 475-2710
dbmoylan@oagguam.org

William Lyle Stamps
Assistant Attorney General
Office of the Attorney General of Guam
Civil Division
134 W. Soledad Avenue, Ste. 302
Hagåtña, Guam 96910
(671) 475-2710
lstamps@oagguam.org

*Respectfully submitted* this 31st day of July 2025.

OFFICE OF THE GOVERNOR OF GUAM
Office of Legal Counsel

By: */s/ Leslie A. Travis*
LESLIE A. TRAVIS
JEFFREY A. MOOTS
*Attorneys for Plaintiff*
*Lourdes A. Leon Guerrero,*
*Governor of Guam*